## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE SAULT STE. MARIE TRIBE OF
CHIPPEWA INDIANS,

                            Plaintiff,             Case No. 1:18-cv-2035-TNM

    v.                                       Hon. Trevor N. McFadden

RYAN ZINKE, Secretary, United States
Department of the Interior;

            and

UNITED STATES DEPARTMENT OF THE
INTERIOR,

                         Defendants.

**Saginaw Chippewa Indian Tribe of Michigan's Memorandum of Points and Authorities
in Support of its Motion to Intervene**

Donald C. Holmes
DC Bar No. 137414
Holmes Pittman & Haraguchi, LLP
1228 Oates Street NE
Washington, DC 20002
Phone: (410) 482-9505
dch@dcholmes.com

William A. Szotkowski (*Admission
Pending in D.D.C.*)
MN Bar ID #0161937
Hogen Adams PLLC
1935 W. County Rd. B2, Ste. 460
St. Paul, MN 55113
Phone: (651) 842-9100
E-mail: bszotkowski@hogenadams.com

Sean J. Reed
General Counsel of Soaring Eagle Gaming
and Intergovernmental Affairs
Saginaw Chippewa Indian Tribe
7070 East Broadway
Mt. Pleasant, Michigan 48858
Phone: (989) 775-4032
E-mail: sreed@sagchip.org

***Counsel for Proposed Intervenor Saginaw Chippewa Indian Tribe of Michigan***

## Table of Contents

Introduction and Summary…………….…………………………...…………………….…..1

Background ................................................................................................................................. 1

Argument .................................................................................................................................... 5

    I. The Court should allow the Saginaw Tribe to intervene as of right under Rule 24(a). ........5

        A. The Saginaw Tribe's motion to intervene is timely. ..................................................... 6

        B. The Saginaw Tribe has a substantial legal interest in this litigation. ............................ 8

        C. Any reversal of Interior's action will threaten to impair the Saginaw Tribe's interest.11

        D. The existing parties cannot adequately protect the Saginaw Tribe's interest. ............. 13

        E. The Saginaw Tribe has standing to participate in this matter. ..................................... 15

    II.  In the alternative, the Saginaw Tribe should be allowed to intervene permissively under Rule 24(b)...........................................................................................................................17

Conclusion ............................................................................................................................... 18

## Table of Authorities

Cases

*100Reporters LLC v. U.S. Dep't of Justice,
    307 F.R.D. 269 (D.D.C. 2014) ................................................................. 7, 8, 18
Akiachak Native Cmty. v. U.S. Dep't of Int.,
    584 F. Supp. 2d 1 (D.D.C. 2008) ................................................................. 10
Alaska v. Fed. Energy Reg. Comm'n,
    980 F.2d 761 (D.C. Cir. 1992) ..................................................................... 9
Am. Horse Prot. Ass'n, Inc. v. Veneman,
    200 F.R.D. 153 (D.D.C. 2001) ................................................................. 11, 16
Arizona v. California,
    460 U.S. 605 (1983) ................................................................................. 17
Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.,
    272 F.R.D. 26 (D.D.C. 2010) ....................................................................... 12
Butte Cnty, CA, v. Hogen,
    No. 08-519, 2008 WL 2410407 (D.D.C. June 16, 2008) ..................................... 18
California v. Cabazon Band of Mission Indians,
    480 U.S. 202 (1987) ................................................................................... 2
Cayuga Nation v. Zinke,
    324 F.R.D. 277 (D.D.C. 2018) ................................................................. 7, 14
County of San Miguel, Colo. v. MacDonald,
    244 F.R.D. 36 (D.D.C. 2007) ....................................................................... 11
Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n,
    788 F.3d 312 (D.C. Cir. 2015) ............................................................ 14, 15, 16
Deutsche Bank Nat'l Trust Co. v. F.D.I.C.,
    717 F.3d 189 (D.C. Cir. 2013) ..................................................................... 17
DSMC, Inc. v. Convera Corp.,
    273 F. Supp.2d 14 (D.D.C. 2002) ................................................................. 9
E.E.O.C. v. Nat'l Children's Center,
    146 F.3d (D.C. Cir. 1998) ........................................................................... 17
*Forest County Potawatomi Cmty. v. United States,
    317 F.R.D. 6 (D.D.C. 2016) .................................................................... passim
Friends of Animals v. Kempthorne,
    452 F. Supp. 2d 64 (D.D.C. 2006) ................................................................. 8
Fund for Animals, Inc. v. Norton,
    322 F.3d 728 (D.C. Cir. 2003) ........................................................ 6, 14, 15, 16
Gov't Accountability Project v. Food & Drug Admin.,
    181 F. Supp. 3d 94 (D.D.C. 2015) ............................................................... 13
Guardians v. U.S. Bureau of Land Management,
    No. 12-0708 (ABJ), 2012 WL 12870488 (D.D.C. June 7, 2012) .................... 8, 10, 11
Hodgson v. United Mine Workers of Am.,
    473 F.2d 118 (D.C. Cir. 1972) ..................................................................... 14
Jones v. Prince George's Cty., Maryland,
    348 F.3d 1014 (D.C. Cir. 2003) ............................................................... 8, 15

*Karsner v. Lothian*,
   532 F.3d 876 (D.C. Cir. 2008)................................................................ 6, 11
*Military Toxics Project v. E.P.A.*,
   146 F.3d 948 (D.C. Cir. 1998) ...................................................................... 16
*Natural Resources Defense Council, Inc. v. U.S. E.P.A.*,
   99 F.R.D. 607 (D.D.C. 1983)......................................................................... 9
*Navistar, Inc. v. Jackson*,
   840 F. Supp. 2d 357 (D.D.C. 2012) ............................................................... 7
*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967) ................................................................. 8, 13
*Roane v. Leonhart*,
   741 F.3d 147 (D.C. Cir. 2014) ...................................................................... 6
*Roeder v. Islamic Republic of Iran*,
   333 F.3d 228 (D.C. Cir. 2003) ..................................................................... 15
*Schoenborn v. Wash. Metro. Area Transit Auth.*,
   247 F.R.D. 5 (D.D.C. 2007).......................................................................... 11
*SEC v. Prudential Sec. Inc.*,
   136 F.3d 153 (D.C. Cir. 1998) ................................................................. 6, 11
*Sierra Club v. Van Antwerp*,
   523 F. Supp. 2d 5 (D.D.C. 2007)............................................................ 17, 18
*Smoke v. Norton*,
   252 F.3d 468 (D.C. Cir. 2001) ...................................................................... 6
*Soaring Eagle Casino & Resort v. N.L.R.B.*,
   791 F.3d 648 (6th Cir. 2015) ......................................................................... 9
*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972)..................................................................................... 13
*United States v. AT&T*,
   642 F.2d 1285 (D.C. Cir. 1980) ............................................................... 6, 13
*WildEarth Guardians v. Jewell*,
   320 F.R.D. 1 (D.D.C. 2017).............................................................. 8, 12, 14
*WildEarth Guardians v. Nat'l Park Serv.*,
   604 F.3d 1192 (10th Cir. 2010) ................................................................... 12
*Wildearth Guardians v. Salazar*,
   272 F.R.D. 4 (D.D.C. 2010) ...................................................................... 7, 13

## Statutes and Laws

25 U.S.C. § 2702 ............................................................................................. 2
25 U.S.C. § 2703 ............................................................................................. 2
25 U.S.C. § 2710 ............................................................................................. 2
25 U.S.C. § 2719 ..................................................................................... 2, 3, 5
Pub. L. 105-143, 111 Stat. 2652 (1997)........................................................ 4

## Rules

Fed. R. Civ. P. 24(b) .......................................................................... 1, 17, 18
Fed. R. Civ. P. 24(a) ................................................................................ 1, 5

<u>Other Authorities</u>

83 Fed. Reg. 4,235 (Jan. 30, 2018) ............................................................................................... 1
58 Fed. Reg. 63,262 (Nov. 30, 1993) ............................................................................................. 3

**Introduction and Summary**

The Saginaw Chippewa Indian Tribe of Michigan (the "Saginaw Tribe") submits the following memorandum of law in support of its Motion to Intervene as a defendant as of right under Rule 24(a) of the Federal Rules of Civil Procedure and, alternatively, with the Court's permission under Rule 24(b).

In this matter, the Sault Ste. Marie Tribe of Chippewa Indians (the "Sault Ste. Marie Tribe") has challenged the decision of the U.S. Department of the Interior ("Interior") and Secretary of the Interior Ryan Zinke (collectively the "Federal Defendants") denying the Sault Ste. Marie Tribe's application to take land into trust.

The Sault Ste. Marie Tribe's trust application is a first step in its attempt to establish off-reservation gaming within the Saginaw Tribe's aboriginal homeland, and within the ceded territory of the Saginaw Tribe's 1819 Treaty with the United States, which is a key market for its own revenue crucial to the exercise of essential government functions. This important and legally protectable interest would be impaired if the Sault Ste. Marie Tribe would prevail in this litigation, and its interest cannot be adequately represented by the existing Federal Defendants. Accordingly, the Saginaw Tribe's timely Motion to Intervene satisfies Rule 24's requirements for intervention as of right.

**Background**

The Saginaw Tribe is a federally recognized Indian tribe with a reservation located in Isabella and Arenac Counties in Michigan. Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 83 Fed. Reg. 4,235, 4,238 (Jan. 30, 2018).

As the modern-day successor to the Saginaw, Black River, and Swan Creek bands, the Saginaw Tribe historically occupied much of central Michigan, including the area encompassing the Detroit and the Lansing-metro areas. The Saginaw Tribe operates two casinos on its reservation lands. The revenue from its casinos provides funding for crucial governmental services for its tribal members and other Native Americans, including housing, health care, and education. Declaration of Ray Brenny in Support of Saginaw Tribe's Motion to Intervene ("Brenny Decl.") at ¶¶ 10 (Dec. 21, 2018). As the second largest employer in Isabella County, Michigan, the Saginaw Tribe also provides a substantial benefit to the local economy, and participates in the provision of police, fire, and other governmental services to the surrounding community. Brenny Decl. at ¶¶ 10–14.

In *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 221–22 (1987), the Supreme Court recognized the right of tribes to conduct gaming in Indian country. The Indian Gaming Regulatory Act ("IGRA") was enacted in response to the *Cabazon* decision to provide a comprehensive statutory scheme that regulates Indian gaming on "Indian lands." 25 U.S.C. § 2702(1)–(3). "Indian lands" are defined by IGRA as "all lands within the limits of any Indian reservation," and any lands "held in trust by the United States for the benefit of any Indian tribe or individual" or lands "held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power." 25 U.S.C. § 2703(4)(A)–(B). IGRA prohibits off-reservation gaming on lands acquired and held in trust for a tribe after October 17, 1988, subject to limited exceptions. *See* 25 U.S.C. § 2719.

In addition, IGRA requires that federally recognized tribes conduct certain classes of gaming pursuant to federally approved compacts between the tribe and the state where the tribe is located. *See* 25 U.S.C. § 2710(d)(1)(c) (setting forth the condition that Class III gaming may

only occur, among other requirements, if it is "conducted in conformance with a Tribal–State

compact entered into by the Indian tribe and the State"). In Michigan, the compacts for the Sault

Ste. Marie Tribe and the Saginaw Tribe were executed on the same day in 1993.[1] These

compacts contemplated the potential future desire of the tribes to conduct gaming off their

established reservations. Section 9 of the 1993 compacts placed clear restrictions on the ability of

the tribes to establish casinos outside of their reservations. Section 9 of these compacts provides:

> An application to take land in trust for gaming purposes pursuant to § 20 of IGRA
> (25 U.S.C. § 2719) shall not be submitted to the Secretary of the Interior in the
> absence of a prior written agreement between the Tribe and the State's other
> federally recognized Indian Tribes that provides for each of the other Tribes to share
> in the revenue of the off-reservation gaming facility that is the subject of the § 20
> application.

Brenny Decl. at Ex. A at 15. The Saginaw Tribe is a federal recognized Indian tribe within the

state of Michigan and therefore an intended third-party beneficiary of Section 9 of the Sault Ste.

Marie Tribe's compact.

On June 10, 2014, the Sault Ste. Marie Tribe filed two applications with the United States

Department of Interior to take three parcels of land into trust. One application was for an

approximately 71 acre parcel of land located in New Boston, Michigan, known as the "Sibley

Parcel." ECF No. 1-2. The second application was for two parcels totaling approximately 2.26

acres of landing Lansing, Michigan, known as the "Lansing Parcels." ECF No. 1-3. These

parcels are located in the Lower Peninsula of Michigan, while the Sault Ste. Marie Tribe's

Headquarters and reservation is located in the Upper Peninsula; the parcels are more than 350

---

[1] Five other Michigan tribes, the Grand Traverse Band of Ottawa and Chippewa Indians, the
Hannahville Indian Community, the Bay Mills Indian Community, the Keweenaw Bay Indian
Community, and the Lac Vieux Desert Band of Lake Superior Chippewa Indians executed
Tribal–State compacts on that same day. *See* 58 Fed. Reg. 63,262 (Nov. 30, 1993).

miles and 285 miles by road, respectively, from the Sault Ste. Marie Tribe's headquarters. *See* ECF No. 1-6 at 5.

The Sault Ste. Marie Tribe did not provide a revenue sharing agreement for these parcels to the Department of Interior when it filed its application for trust status—or any time thereafter––and no such agreement exists. In an effort to avoid its responsibility under Section 9 of its compact—and to establish a gaming facility well outside its reservation—the Sault Ste. Marie Tribe argued that the Michigan Indian Land Claims Settlement Act ("MILCSA"), Pub. L. 105-143, 111 Stat. 2652 (1997) mandates that the challenged parcels be brought into trust. The Sault Ste. Marie Tribe argued that because it acquired the challenged parcels using "interest or other income of the Self-Sufficiency Fund" established for it in MILCSA, § 108(f), and this acquisition was "for consolidation or enhancement of tribal lands," § 108(c)(5), the lands must be taken into trust. *See* ECF No. 1-6 at 2–3. The Sault Ste. Marie Tribe spent almost 30 months engaging in a back-and-forth with Interior, which included Interior requesting additional information about the purchase of the parcels and compliance with MILCSA and receiving additional briefing and information from interested parties, including the Saginaw Tribe. ECF No. 1 at 15–18; Exs. 1, 2, 3.

On January 19, 2017, Interior issued an initial letter determining that the Sault Ste. Marie Tribe had failed to submit the evidence necessary to take the parcels into trust. ECF No. 1-5. In this letter, Interior explained that the Sault Ste. Marie Tribe had failed to produce "sufficient evidence to demonstrate that acquisition of the parcels would 'consolidat[e] or enhance' tribal lands, as required by MILCSA," and rejected adopting the Sault Ste. Marie Tribe's preferred definition of "enhance," which "would effectively provide that *any* acquisition of land using income from the Self-Sufficiency Fund would constitute an enhancement." ECF No. 1-5 at 2–3,

4

5. Six months later, despite given the option to do so, the Sault Ste. Marie Tribe had "submitted no new evidence to demonstrate that acquisition of the Parcels would effect a consolidation or enhancement of tribal lands," and Interior issued a second letter on July 24, 2017 denying the trust applications. ECF No. 1-6 at 2. Interior explained that no evidence had been provided that showed the parcels would "'enhance' the values of nearby lands," and the Sault Ste. Marie Tribe's argument that the Lower Peninsula Parcels would enhance its existing lands in the Upper Peninsula was far too attenuated. ECF No. 1-6 at 4–5.

Over a year later, on August 30, 2018, the Sault Ste. Marie Tribe filed this lawsuit, requesting this Court "vacate the final decision denying the Tribe's trust submissions," and "order Defendants to take the parcels into trust (or in the alternative, to order Defendants to resolve any remaining ministerial issues in the Tribe's favor)." ECF No. 1 at 3–4. Upturning Interior's refusal to accept the Sault Ste. Marie Tribe's land into trust under Section 108 of MILCSA will invariably lead to attempted expanded off-reservation gaming on those lands under the IGRA without compliance with Section 9 of its compact or concurrence with the Governor of Michigan that would otherwise be required under the IGRA. *See* ECF No. 1 at 11; 25 U.S.C. §§ 2719(b)(1)(A)–(B).

## Argument

## I.   The Court should allow the Saginaw Tribe to intervene as of right under Rule 24(a).

The Saginaw Tribe satisfies the requirements for intervention as of right. Federal Rule of Civil Procedure 24(a) provides:

On timely motion, the court must permit any to intervene who: . . .

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest unless existing parties adequately represent that interest.

Under Rule 24(a)(2) in the D.C. Circuit, "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 85 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)). The proposed intervenor under Rule 24(a) must also establish sufficient Article III standing. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003). The Saginaw Tribe meets all necessary criteria.

**A.  The Saginaw Tribe's motion to intervene is timely.**

In determining whether a motion to intervene is timely in the D.C. Circuit, courts make the decision "in consideration of all the circumstances . . . ." *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). These include the time that has elapsed since the suit began, but also the purpose of the intervention, the need for intervention, and the "probability of prejudice to those already parties in the case." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (quoting *AT&T*, 642 F.2d at 1295). This reflects that "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *100Reports LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 275 (D.D.C. 2014) (quoting *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (citations omitted)).

The Saginaw Tribe is filing its motion to intervene in the case within two weeks of the Federal Defendants' answer. *See* ECF No. 11. The Sault Ste. Marie Tribe filed its Complaint on August 30, 2018, and there have been no substantive or case-determinative motions filed in the case thus far. *See* ECF Nos. 1, 10. There have been no mandatory exchanges, no filing of the administrative record, no status conference, and no progress of substance in the case wherein the

existing parties would be prejudiced by Saginaw Tribe's participation. *See, e.g.*, *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 15 (D.D.C. 2010). The Court has routinely found similar intervention applications timely when filed contemporaneously with, or shortly thereafter, the initial defensive responsive pleadings. *See Cayuga Nation v. Zinke*, 324 F.R.D. 277, 282 (D.D.C. 2018); *100Reporters LLC*, 307 F.R.D. at 275; *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012). Further, the Saginaw Tribe agrees to abide by the scheduling order recently set in the case. ECF No. 14.

The Saginaw Tribe has routinely sought to ensure that its interests are protected from the Sault Ste. Marie Tribe's attempts at expanded off-reservation gaming. In 2012, it participated as an amicus in the state of Michigan's lawsuit against the Sault Ste. Marie Tribe and its officials to enjoin the Sault Ste. Marie Tribe from applying to have the land at issue taken into trust. *See Michigan v. Sault Ste. Marie Tribe of Chippewa Indians*, No. 1:12-cv-00962-RJJ, ECF No. 26 (W.D. Mich. Jan. 2, 2013). It also participated as an amicus at the Sixth Circuit appeal of that case. *See Michigan v. Sault Ste. Marie Tribe of Chippewa Indians*, No. 13-1438, ECF No. 30 (6th Cir. June 24, 2013). Then, when the Sault Ste. Marie Tribe actually submitted its fee-to-trust applications to the Secretary of the Interior on June 10, 2014, the Saginaw Tribe continued to participate, providing a notice of forthcoming comments on September 9, 2015, an opposition brief to the Department of the Interior on April 6, 2016, and further materials in response on December 9, 2016, in conjunction with the Nottawaseppi Huron Band of the Potawatomi. *See* Exs. 1, 2, and 3; ECF No. 1-5 at 2.

The Saginaw Tribe has consistently participated in the resolution of this issue, and the Court should grant its motion to intervene.

**B. The Saginaw Tribe has a substantial legal interest in this litigation.**

"This test operates in large part as a practical guide, with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *100Reporters LLC*, 307 F.R.D. at 275 (internal quotations, marks, and citations omitted); *see also Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). The D.C. Circuit "has held that proposed intervenors of right 'need only an interest in the litigation—not a cause of action or permission to sue.'" *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 69 (D.D.C. 2006) (quoting *Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1018 (D.C. Cir. 2003) (internal marks omitted)).

In this Circuit, economic interests are legitimate substantial interests that allow for the intervention of additional parties to a lawsuit. *See WildEarth Guardians v. Jewell*, 320 F.R.D. 1 (D.D.C. 2017) ("Of the billions of dollars in royalty revenue generated by federal oil and gas leases in Wyoming, about half is returned to the state . . . . Thus, if Plaintiffs were successful in this case, the economic and regulatory interests of Wyoming, Colorado, and Utah would likely be impaired. Other courts in this jurisdiction have found that similar situations justified intervention."); *see also Guardians v. U.S. Bureau of Land Management*, No. 12-0708 (ABJ), 2012 WL 12870488, at *1 (D.D.C. June 7, 2012) (noting that the state of Wyoming had an "economic interest" in the development of the coal mining operations leases challenged in the case, because it generated "revenue for the state").

The Saginaw Tribe's interest in intervention is substantial. Because its Isabella Indian Reservation lacks natural resources to generate substantive income, and it has a small tax base, the Saginaw Tribe relies on tribal gaming to finance and expand its provision of essential governmental services, including its social, health, and educational programs. Brenny Decl. at

8

¶ 10; *see also Soaring Eagle Casino & Resort v. N.L.R.B.*, 791 F.3d 648, 652 (6th Cir. 2015). Its gaming operations benefit both Saginaw Tribal members and the non-Indians and non-member Indians in its community by increasing employment opportunities and pouring resources in to the local economy. Brenny Decl. at ¶¶ 10–13; *cf. Soaring Eagle Casino & Resort*, 791 F.3d at 652 (noting that only 7% of the Saginaw Tribe's Soaring Eagle Casino & Resort employees are members of the Saginaw Tribe). Even as the Saginaw Tribe's self-governance costs have increased, it continues to use gaming revenues to fund the governmental efforts of neighboring cities, townships, and counties, and to fund intergovernmental projects with these non-tribal neighbors. Brenny Decl. at ¶¶ 12–13. Twice a year, the Saginaw Tribe shares 2% of its net slot revenue with local non-tribal governments—$3.1 million in Fall 2018 alone. Brenny Decl. at ¶ 13.

Any casino that expands off-reservation gaming, (but especially casinos like the one the Sault Ste. Marie Tribe plans to open, located within metropolitan markets that the Saginaw Tribe relies upon to draw many of its customers) would directly threaten these governmental funding streams, restricting the Saginaw Tribe's ability to provide essential governmental services to its own membership and its neighbors. In this way, the Saginaw Tribe has shown that it "would suffer harm from an adverse decision on the merits." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp.2d 14, 25 (D.D.C. 2002) (quoting *Alaska v. Fed. Energy Reg. Comm'n*, 980 F.2d 761, 763 (D.C. Cir. 1992)).

Beyond the Saginaw Tribe's substantial economic interest in this litigation, it has an interest in ensuring a fair, measured, and consistent application and interpretation of IGRA, MILCSA, and Michigan's Tribe–State compacts, because it currently operates its casinos under the existing interpretation of these federal laws and state agreements. In *Natural Resources*

*Defense Council, Inc. v. U.S. E.P.A.*, 99 F.R.D. 607 (D.D.C. 1983), the EPA made initial regulatory findings that certain pesticide products were safe enough to be registered, and these initial findings were challenged by the plaintiffs. The court found the intervenor-applicants, as pesticide manufacturers and industry representatives, had "a substantial and direct interest in the subject of this litigation" because "[i]f plaintiffs succeed in this case, these regulatory decisions, which are obviously in the intervenors' interests, will be set aside." *Id.* at 609. The presence of Section 9 in the Tribal–State compacts makes the Saginaw Tribe an intended beneficiary of Sault Ste. Marie's compact with the state of Michigan, as part of the carefully crafted framework governing Indian gaming within the United States and Michigan. *Cf. Akiachak Native Cmty. v. U.S. Dep't of Int.*, 584 F. Supp. 2d 1, 6 (D.D.C. 2008) (state of Alaska had interest where litigation could affect prior settlement affecting its interests).

The Saginaw Tribe's interest in the litigation has already been acknowledged by the existing defendants: the Saginaw Tribe offered written comments in the application process for the parcels at issue in this litigation. On April 6, 2016, and December 9, 2016, the Saginaw Tribe submitted briefs, along with the Nottawaseppi Huron Band of the Potawatomi, to the Interior. The January 19, 2017, letter from the Deputy Assistant Secretary to the Chairman of the Sault Ste. Marie Tribe specifically refers to these briefs, going so far as to offer "Opposing Tribes" as a short-name for the two tribes. Letter from Ann Marie Bledsoe Downes, Deputy Assistant Secretary, Dep't of the Interior, to Aaron A. Payment, Chairman, Sault Ste. Marie Tribe of Chippewa Indians (Jan. 19, 2017), ECF No. 1-5 at 2; *see also Guardians v. U.S. Bureau of Land Management*, No. 12-0708 (ABJ), 2012 WL 12870488, at *1 (D.D.C. June 7, 2012) (noting the state of Wyoming's interest in supporting a federal agency's decision to authorize land leases in part because "it has already played a role in the process" by participating as an "advisor-

10

member" of one team, and its state agencies serving as "cooperating agencies" during the administrative decision making process).

**C. Any reversal of Interior's action will threaten to impair the Saginaw Tribe's interest.**

The third factor in the D.C. Circuit's four-factor Rule 24(a) test is that "the action must threaten to impair that interest" *Karsner v. Lothian*, 532 F.3d 876, 85 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)). However, this inquiry "is not a rigid one," *Forest County Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 10 (D.D.C. 2016), and in considering this factor, "the courts in this circuit look to the 'practical consequences' to [the] movant of denying intervention." *Schoenborn v. Wash. Metro. Area Transit Auth.*, 247 F.R.D. 5, 7 (D.D.C. 2007) (quoting *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 158 (D.D.C. 2001)). Courts within this district have recognized that an economic downturn can threaten to impair a protected interest. *See, e.g.*, *Guardians v. U.S. Bureau of Land Management*, No. 12-0708 (ABJ), 2012 WL 12870488, at *2 (D.D.C. June 7, 2012).

Practically, if the Saginaw Tribe is denied intervention in the case, it will be unable to have a stake in the litigation that will determine whether its own casinos will face significant depletion of its customers and the revenue stream associated with its gaming facilities, causing the Saginaw Tribe financial, and governmental, harm. Brenny Decl. at ¶ 15.  If the Sault Ste. Marie Tribe succeeds in this litigation and the Federal Defendants take land into trust within the Lansing and Detroit metro areas, the Sault Ste. Marie Tribe has already admitted that it plans to create a gaming operation on those parcels. *See* ECF No. 1 at 11. This, in turn, will cause a drastic reduction in the revenue streams that the Saginaw Tribe receives and relies upon. *See* Part I.B., *supra*; Brenny Decl. at ¶ 15; *see also County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (wherein the court recognized that an immediate impairment of

economic interests, should the court order the issuance of an "emergency rule listing immediately the Gunnison sage-grouse as 'endangered,'" even pending a remand for consideration of the listing determination, as a reason for granting a motion to intervene).

Further, "the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan." *WildEarth Guardians*, 320 F.R.D. at 4 (quoting *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010)). The Saginaw Tribe's interests will undoubtably be impaired should this Court grant the relief that the Sault Ste. Marie Tribe seeks, the entering of "a declaration, injunction, or writ of mandamus compelling the Secretary to take the Sibley and Lansing Parcels into trust[.]" ECF No. 1 at 31. That the Saginaw Tribe may later have some other opportunity to prevent the Sault Ste. Marie Tribe from opening gaming operations within the Saginaw Tribe's historic aboriginal territory does not result in a bar to its intervention in this suit. *See Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 29–30 (D.D.C. 2010). The Court should allow the Saginaw Tribe to intervene to ensure its interests in this litigation are not impaired.

Beyond the Saginaw Tribe's specific interest that could be impaired by this action itself, the Saginaw Tribe's participation in the drafting of the IGRA, and its status as a tribal government in Michigan, alongside the MILCSA tribes, and its participation in a tribal–state compact, render its interests in the case potentially to be impaired at the state and national levels. The status of Indian gaming in the United States, and within Michigan, is a carefully crafted regulatory scheme that many stakeholders, including the Saginaw Tribe, have relied upon for decades. Brenny Decl. at ¶¶ 4–5. A reversal of the Federal Defendants' decision in this case will

cause a change in the operating procedures within the state of Michigan, undoubtably leading to

additional tribes seeking to have off-reservation lands taken into trust under MILSCA, without

regard for Section 9 of the tribal–state compacts. Any such change in the regulations governing

Indian gaming in Michigan will impair the Saginaw Tribe's interests. This district has considered

before that where there may be a "discrete challenge" to one particular decision made by Federal

Defendants, it can have "potentially broad implications" sufficient to satisfy the third prong of

the test for mandatory intervention. *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 16

(D.D.C. 2010).

Because it has both economic and regulatory–scheme interests in the challenged agency

decision, the Saginaw Tribe satisfies the "impairment of interest" requirement for intervention as

of right.

### D.  The existing parties cannot adequately protect the Saginaw Tribe's interest.

Intervention by a movant "should be allowed . . . when 'there is a serious possibility that

the (absentee's) interest may not be adequately represented by any existing party.'" *United States

v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (quoting *Nuesse*, 385 F.2d at 704).

This district has previously recognized that "the Supreme Court has instructed that the burden of

showing inadequate representation for Rule 24(a) purposes is 'minimal.'" *Gov't Accountability

Project v. Food & Drug Admin.*, 181 F. Supp. 3d 94, 96 (D.D.C. 2015) (quoting *Trbovich v.

United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). In fact, in this Circuit, this factor has

been described as imposing a "burden on those opposing intervention to show the adequacy of

the existing representation." *Nuesse*, 385 F.2d at 702.

The Saginaw Tribe meets its minimal burden in this case as the circumstances of this case

make it clear that neither of the Federal Defendants, nor the Plaintiff Sault Ste. Marie Tribe, can

represent the Saginaw Tribe's interest. "Where, as here, one of the existing parties is a governmental entity, courts in this Circuit 'have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.'" *Forest County Potawatomi Cmty.*, 317 F.R.D. at 14 (quoting *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)); *see also Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 383 (D.C. Cir. 2015). The D.C. Circuit has noted that it "look[s] skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Policy Strategies*, 788 F.3d at 321. In *Wildearth Guardians v. Jewell*, 320 F.R.D. 1, *4 (D.D.C. 2017), the court noted the specific differences in litigation interests between the federal government and state governments: "While the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the interests of their own citizens."

Further, "[u]nder Rule 24(a), to intervene as a matter of right, a putative intervenor 'need not prove that representation by the Secretary *is* inadequate, but need show merely that it *may* be; and that the burden of making that showing should be treated as minimal.'" *Forest County Potawatomi Cmty.*, 317 F.R.D. at 14 n.10 (quoting *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972) (emphasis in original)). The Federal Defendants' interest in this case will likely center on upholding its interpretation of the federal rules and laws at issue in the case. *See, e.g.*, *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 283 (D.D.C. 2018) (noting that "the federal government has an interest in defending the decisions it has made that are challenged in this case," but "it does not share the particular, narrow interests of the [tribe]" previously identified). While the Saginaw Tribe also has an interest in ensuring the federal statutes and state-tribal gaming compacts are faithfully interpreted, *see* Parts I.B., C., *supra*, it also has an

14

interest in specifically protecting the funding streams for its provision of essential governmental services, *see id.* In this way, the Saginaw Tribe's interests are narrower than those of the Federal Defendants, and only the Saginaw Tribe can fully represent the governmental-responsibility (via protecting its economic interest) it has to its own members. The Federal Defendants' do not share this interest, and—especially should any type of settlement occur in this case—it could cause the interests of the Federal Defendants and the Saginaw Tribe  to "diverge during the course of the litigation." *Fund for Animals*, 322 F.3d at 736. Likewise, the Sault Ste. Marie Tribe does not have an interest in protecting the Saginaw Tribe's financial revenue streams. The Saginaw Tribe has established that representation by the existing parties would inadequately protect its interests.

### E.  The Saginaw Tribe has standing to participate in this matter.

"Article III standing is not a threshold determination that courts normally make before allowing a defendant to enter a case. . . . But where a party tries to intervene as another defendant, we have required it to demonstrate Article III standing[.]" *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015). In several cases, the D.C. Circuit has considered the elements of "standing" simultaneously—or alternatively— with the third element of the intervention-as-of-right analysis. *See, e.g.*, *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement."); *Forest County Potawatomi Cmty.*, 317 F.R.D. at 11 n.4 ("[W]hen a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*."); *see also Crossroads Grassroots Policy Strategies*, 788 F.3d at 320; *Jones v. Prince George's Cty., Md.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003) ("Article III's 'gloss' on Rule 24 requires an intervenor to have a 'legally protectable' interest."). Despite this possible redundancy in analysis, the Saginaw

Tribe emphasizes that it has standing to join this lawsuit, and it can show an injury-in-fact, causation, and redressability. *Fund for Animals, Inc.*, 322 F.3d at 733.

 "Where, as here, a party seeks to intervene as a defendant to uphold an action taken by the government, the party must establish that it will be 'injured in fact by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld.'" *Forest County Potawatomi Cmty.*, 317 F.R.D. at 11 (quoting *Prot. Assoc., Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001)); *see also Military Toxics Project v. E.P.A.*, 146 F.3d 948, 954 (D.C. Cir. 1998) (finding a chemical manufacturers association had met the standard for intervention as defendants because the  intervenors "would suffer concrete injury if the court grants the relief the petitioners seek," which was a challenge to an EPA regulation)

"Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Policy* Strategies, 788 F.3d at 317. As characterized by the D.C. Circuit, in two separate cases the defendants "sought to uphold agency action affecting them indirectly," which was deemed to be sufficient for Article III standing. *Id.* at 318. These two cases were *Military Toxic Project v. E.P.A.*, 146 F.3d 948 (D.C. Cir. 1998) (trade association whose members produced military mutilations or operated military firing ranges regulated by EPA rule had standing to intervene in case challenging the rule) and *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003) (foreign government ministry had standing to intervene in case challenging the application of the Endangered Species Act to argali sheep located within foreign government's borders, where foreign government identified economic interest in tourist hunting program dedicated to sheep that would be negatively

impacted if the plaintiffs received the requested relief). These cases epitomize the Saginaw

Tribe's situation here. As described above, a reversal of the Federal Defendants' decision will

open the door for the Sault Ste. Marie Tribe to open a casino that will directly impact the

Saginaw Tribe's revenue streams; it is regulated by, and relies upon, the regulatory framework of

IGRA and tribal–state compacts that govern Indian gaming raised in this case, it benefits from

the current administrative decision, and it would suffer concrete injury if this Court grants the

relief plaintiffs seek. Unlike a situation where the potential adverse injury-in-fact would require

the entry of an unfavorable settlement, here, the outcome of this litigation itself could result in

injury to financial interests of the Saginaw Tribe. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v.*

*F.D.I.C.*, 717 F.3d 189, 193 (D.C. Cir. 2013).

## II.  In the alternative, the Saginaw Tribe should be allowed to intervene permissively under Rule 24(b).

Alternatively, the Saginaw Tribe seeks permissive intervention. Under Rule 24(b)(1)(B),

"[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense

that shares with the main action a common question of law or fact. In addition, the "court must

also determine whether the proposed intervention 'will unduly delay or prejudice the

adjudication of the original parties' rights.'" *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10

(D.D.C. 2007) (quoting Fed. R. Civ. P. 24(b)(3)). While "permissive intervention is an inherently

discretionary enterprise," *E.E.O.C. v. Nat'l Children's Center*, 146 F.3d at 1042, 1046–48 (D.C.

Cir. 1998), the Supreme Court has recognized the importance of having Indian tribes participate

in actions that are "critical to their welfare," *Arizona v. California*, 460 U.S. 605, 614–15 (1983).

As detailed in Part I.A, *supra*, this motion is timely.

The Saginaw Tribe also satisfies Rule 24(b)'s requirements that it share a "common

question of law or fact" with the main action—the defense that the Department of the Interior

exercised its proper authority in denying the Sault Ste. Marie Tribe's fee-to-trust land applications. *See e.g.*, *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007); *Butte Cnty, CA v. Hogen*, No. 08-519, 2008 WL 2410407, at *2 (D.D.C. June 16, 2008); *100Reporters*, 307 F.R.D. at 287.

Finally, because the Saginaw Tribe has already participated in the administrative process of the challenged fee-to-trust application, and it has timely filed this motion, the Saginaw Tribe's intervention in this case will not cause any undue delay for the existing parties. *See* Fed. R. Civ. P. 24(b)(3); *Sierra Club*, 523 F. Supp. 2d at 10.

## <u>Conclusion</u>

Whether the Court considers the Saginaw Tribe's motion to intervene under the factors of either Rule 24(a) or Rule 24(b), the Saginaw Tribe has met the requirements of this Circuit to intervene in the case. The Saginaw Tribe's participation in this case will not cause any burden or delay, but will allow it the opportunity to protect the revenue streams that are critical to its governmental operations. The outcome of this case will have a direct impact on the Saginaw Tribe. The Saginaw Tribe thus respectfully requests that this Court grant its motion to intervene.

Dated: <u>December 23, 2018</u>          /s/ Donald C. Holmes
                                        Donald C. Holmes
                                        DC Bar No. 137414
                                        Holmes Pittman & Haraguchi, LLP
                                        1228 Oates Street NE
                                        Washington, DC 20002
                                        Phone: (410) 482-9505
                                        dch@dcholmes.com

                                        William A. Szotkowski (*Admission Pending*)
                                        MN Bar ID #0161937
                                        Hogen Adams PLLC
                                        1935 W. County Rd. B2, Ste. 460
                                        St. Paul, MN 55113
                                        Phone: (651) 842-9100
                                        E-mail:  bszotkowski@hogenadams.com

                                        Sean J. Reed
                                        General Counsel of Soaring Eagle Gaming
                                        and Intergovernmental Affairs
                                        Saginaw Chippewa Indian Tribe
                                        7070 East Broadway
                                        Mt. Pleasant, Michigan 48858
                                        Phone: (989) 775-4032
                                        E-mail:  SReed@sagchip.org

**Counsel for Proposed Intervenor Saginaw Chippewa Indian Tribe of Michigan**