# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS**, <br><br> Plaintiff, <br><br> v. <br><br> **DAVID BERNHARDT, in his official capacity as United States Secretary of the Interior** *et al.*, <br><br> Defendants. | Case No. 1:18-cv-02035 (TNM) |

## MEMORANDUM OPINION

The Sault Ste. Marie Tribe of Chippewa Indians (the "Sault Tribe") seeks to compel the U.S. Department of the Interior to take certain parcels of land into trust for it. Before the Court are motions to intervene from the Saginaw Chippewa Indian Tribe of Michigan (the "Saginaw Tribe") and the Nottawaseppi Huron Band of the Potawatomi ("NHBP" and, with the Saginaw Tribe, the "Intervenor Tribes"). MGM Grand Detroit, L.L.C., Detroit Entertainment, L.L.C., and Greektown Casino, L.L.C. (collectively, the "Casinos") also seek to intervene. Because the Intervenor Tribes and the Casinos have shown that they have standing to intervene, and because they meet the intervention requirements of Federal Rule of Civil Procedure 24, the Court will grant their motions.

## I.

The Michigan Indian Land Claims Settlement Act ("MILCSA") governs the division, use, and distribution of money judgments awarded by the Indian Claims Commission to tribes in Michigan. *See* MILCSA, Pub. L. No. 105-143, 111 Stat. 2652 (1997). Section 108 of MILCSA

established a trust fund for the Sault Tribe comprised in part of these money judgments. 111 Stat. at 2660. Interest and other investment income from this fund can be used "for consolidation or enhancement of tribal lands." *Id*. at 2661. MILCSA also provides that "[a]ny lands acquired using amounts from interest or other income of the [trust fund] shall be held in trust by the Secretary [of the Interior] for the benefit of the tribe." *Id*. at 2662.

Relying on these provisions, the Sault Tribe submitted two requests to the U.S. Department of the Interior (the "Department") to take parcels of land into trust. Compl. 12, ECF No. 1.[1] Though the tribe's land and members are located mainly in Michigan's Upper Peninsula, the parcels it asked the Department to take into trust are in the Lower Peninsula. *Id*. at 10-11. The tribe intends to open casinos on this land. *Id*. at 11.

The Department denied the Sault Tribe's requests. *Id*. at 18. It found that the tribe failed to establish that "acquisition of the Parcels would effect the consolidation or enhancement of tribal lands." Compl. Ex. VI at 2, ECF No. 1-6. The Department explained that the parcels of land are roughly 300 miles away from the tribe's headquarters and that the tribe had not shown how the parcels would enhance the value of its existing landholdings. *Id*. at 3-4. The Department added that "parcels must be contiguous to effect a 'consolidation,' and consolidation of the Tribe's position is not the same as a 'consolidation . . . of tribal lands' as required by MILCSA." *Id*. at 2 n.9.

The Sault Tribe then filed this suit against the Department and its Secretary (together, the "Government").[2] It alleges that the Department lacks the authority to determine whether a land purchase is a "consolidation or enhancement of tribal lands." Compl. 23-24. It also argues that

---

[1] All citations are to the page numbers generated by ECF.

[2] David Bernhardt became the Secretary of the Interior earlier this month. He was therefore automatically substituted as a named defendant under Federal Rule of Civil Procedure 25(d).

the "Department's geographic-proximity requirement" is "unreasonable, inconsistent with any sensible construction of Section 108 of MILCSA, and arbitrary and capricious" in violation of the Administrative Procedure Act (the "APA"). *Id*. at 24. Based on these and other arguments, the Sault Tribe asks the Court to vacate the Department's denial and order it to take the parcels of land into trust. *See id*. at 25-30.

The Intervenor Tribes and the Casinos seek to join the case as defendants. The Casinos, operating in Detroit, argue that the proposed casinos would be close enough to their own facilities to "divert a substantial portion of [their] customers and the associated revenues." Mot. for Leave to Intervene at 5, ECF No. 18-1 ("Casinos' Mot."). They contend that they have a legally protectable interest in being free from this increased competition and that their economic interests would be impaired if the Court grants the tribe the relief it seeks. *Id*. And the Casinos suggest that the Department will not adequately represent their private commercial interests given its role as an advocate for the public and for its own governmental interests. *Id*.

Like the Casinos, the Intervenor Tribes assert a need to intervene to protect their economic interests. *See* Mot. to Intervene at 8-9, ECF No. 16-1 ("Saginaw Tribe's Mot."); Mot. to Intervene as a Def. at 8, 10, ECF No. 20 ("NHBP's Mot."). The Intervenor Tribes also argue that they have an interest in ensuring that the MILCSA and state agreements through which Indian tribes in Michigan operate casinos are interpreted correctly. *See* Saginaw Tribe's Mot. at 14-15; NHBP's Mot. at 11-12.

The Sault Tribe opposes the motions to intervene. It argues that the proposed casino will not be a direct and immediate result of any decision taken by this Court, and that "a general interest in blocking *potential* future gaming does not satisfy" the intervention requirements set forth in Federal Rule 24. Pl.'s Opp. to Proposed Intervenors' Mots. to Intervene at 24, ECF No.

3

28 ("Pl.'s Opp.") (emphasis in original). The tribe also suggests that state agreements about gaming are "irrelevant," as they have "no bearing on the proper application of MILCSA." *Id*. at 25.

The Government opposes only the Casinos' motion. *See* Fed. Defs.' Opp. to the Detroit Casinos' Mot. to Intervene, ECF No. 29 ("Defs.' Opp."). It contends that an economic injury "which results from lawful competition cannot, in and of itself," confer standing on the Casinos to intervene. *Id*. at 7. Like the Sault Tribe, the Government argues that a potential order in favor of the tribe would constitute "at most, the first step in the direction of future competition." *Id*. at 8. And the Government believes that it will adequately represent the interests of the Casinos, as they "share the same ultimate objective: to uphold Interior's decision." *Id*. at 9.

## II.

Federal Rule of Civil Procedure 24 establishes two paths to intervention. A party has the right to intervene when it "claims an interest relating to the property or transaction that is the subject of the action" and "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

To intervene as a matter of right, the moving party must meet four requirements. First, "the application to intervene must be timely." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). Second, the movant "must demonstrate a legally protected interest in the action." *Id*. Third, "the action must threaten to impair that interest." *Id*. And fourth, the movant must show that no existing party to the action "can be an adequate representative of the [movant's] interests." *Id*.

Rule 24 also provides the Court discretion to permit a party to intervene if the it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention "is an inherently discretionary enterprise" that affords the Court "wide latitude." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Like intervention as a matter of right, permissive intervention requires a timely motion. *Id*. It also requires an independent ground for subject matter jurisdiction. *Id*.

Because "a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, [it] must satisfy the standing requirements imposed on those parties." *City of Cleveland v. Nuclear Regulatory Comm'n*, 17 F.3d 1515, 1517 (D.C. Cir. 1994). Thus, the intervenor must, to establish Article III standing, allege an injury in fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). A potential intervenor's Article III standing "presents a question going to this [C]ourt's jurisdiction" and is thus addressed first. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003).

### III.

The Intervenor Tribes and the Casinos have established standing to intervene. Consider first the Intervenor Tribes. NHBP alleges that if the Sault Tribe "puts casinos in [the planned locations], NHBP would lose approximately 30 percent of the market for its FireKeepers casino in Battle Creek—nearly $100 million annually in gross revenue—and would have to lay off nearly 500 employees." NHBP's Mot. at 8. It contends that, should the Court order the Department to take the parcels of land into trust, the Sault Tribe will be free to open its gaming facilities, causing NHBP economic harm. *See id.*

Similarly, the Saginaw Tribe asserts that the Sault Tribe's plans will create new casinos "located within metropolitan markets that the Saginaw Tribe relies upon to draw many of its customers." Saginaw Tribe's Mot. at 9. This, in turn, will "directly threaten [the tribe's] funding streams, restricting [its] ability to provide essential governmental services to its own membership and neighbors." *Id*. In other words, the Intervenor Tribes allege harm to their economic interests that would result from the Department taking the parcels of land into trust.

More, the Intervenor Tribes claim an interest in the correct interpretation and application of MILCSA, the Indian Gaming Regulatory Act (the "IGRA"), and agreements between the State of Michigan and the tribes. *See* Saginaw Tribe's Mot. at 9; NHBP's Mot. at 4. The IGRA permits a tribe to operate casinos on Indian lands "only if such activities are conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State." 25 U.S.C. § 2710(d)(1)(C). The Sault Tribe, the Saginaw Tribe, and five other Indian tribes executed compacts with Michigan in 1993. *See* 58 Fed. Reg. 63,262 (Nov. 30, 1993).[3] Section 9 of these compacts provides that:

> An application to take land in trust for gaming purposes pursuant to § 20 of IGRA (25 U.S.C. § 2719) *shall not be submitted to the Secretary of the Interior in the absence of a prior written agreement between the Tribe and the State's other federally recognized Indian Tribes* that provides for each of the other Tribes to share in the revenue of the off-reservation gaming facility that is the subject of the § 20 application.

*See, e.g.*, Sault Tribe Compact, ECF No. 20-1 at 13 (emphasis added).

The Intervenor Tribes argue that, as federally recognized Michigan tribes, they are among the intended third-party beneficiaries of the compacts. *See* Saginaw Tribe's Mot. at 10; NHBP's Mot. at 4. And they contend that "an order from this Court requiring Interior to approve [the Sault Tribe's] trust applications [would] violate Section 9 [of the compacts]," because there is

---

[3] NHBP executed a compact with Michigan in 1998. *See* 64 Fed. Reg. 8111 (Feb. 18, 1999).

6

currently no revenue-sharing agreement between the Sault Tribe and the Intervenor Tribes for the former's proposed casinos. NHBP's Reply at 8. These contractual interests, they suggest, bolster their standing to intervene.

The Court agrees. Courts in this jurisdiction have often found that similar economic and regulatory interests justify intervention. *See WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 4 (D.D.C. 2017) (citing, among other cases, *Fund for Animals*, 322 F.3d at 737). In *Fund for Animals*, for instance, a wildlife conservation organization sued the Department, alleging that it had violated the Endangered Species Act by failing to characterize the argali sheep as endangered in Mongolia, and by issuing permits for hunters to import killed argali into the United States. 322 F.3d at 730.

Mongolia's Ministry of Nature and Environment sought to intervene as a defendant. *Id*. at 731. The Ministry alleged that "fees paid by sport hunters are the primary source of funding for its argali conservation program." *Id*. at 733. It argued that it had standing because, if the court ordered the Department to bar hunters from importing argali into the United States, "the revenues that support the conservation program will decline." *Id*.

The D.C. Circuit agreed. It concluded that the "threatened loss of tourist dollars, and the consequent reduction in funding for Mongolia's conservation program, constitute a concrete and imminent injury [that] is fairly traceable to the regulatory action." *Id*. It therefore held that the Ministry had standing to intervene, noting that Mongolia "benefits from [the Department's] current regulations, and . . . would suffer concrete injury if the court were to grant the relief the plaintiffs seek." *Id*.

So too here. The Department's decision not to take the parcels of land into trust has prevented the Sault Tribe from opening gaming facilities that compete with the Intervenor

7

Tribes. And if the Court orders the Department to reverse its decision, the Sault Tribe will likely be free to open casinos on the parcels. This would lead to a loss of gaming dollars for the Intervenor Tribes and a consequent reduction in funding for governmental services the tribes provide to their members. The D.C. Circuit has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015) ("*Crossroads GPS*"). The same reasoning applies here.

The Sault Tribe's protestations to the contrary are unpersuasive. It suggests that the "sole issue presented in this case is whether the Department acted unlawfully in failing to take [the parcels of land] into trust under MILCSA." Pl.'s Opp. at 17. It adds that the "[p]roposed intervenors identify no harm to them from having the land held in trust." *Id*. at 17-18. Rather, "they seek to intervene based on the possibility of a 'competitive injury' to their casinos at some later date." *Id*. at 18. This "theory is much too speculative and attenuated to support standing," the Sault Tribe argues, because a "critical 'intervening contingency' here is whether the lands will be deemed gaming eligible under the IGRA." *Id*. at 18-19.

Not so. As the Sault Tribe admits, "there is no legal requirement that [it obtain] a formal determination" that the lands are gaming eligible under the IGRA. Sault Tribe's Opp. at 7. Rather, the Tribe may open a facility on lands not eligible for gaming. *Id*. It does so, however, "'at the risk of violating IGRA and other applicable laws.'" *Id*. (quoting 77 Fed. Reg. 58,769, 58,770 (Sept. 24, 2012)). In fact, if the Department takes the lands into trust, the Tribe suggests it would be legally required only to "provide [the National Indian Game Commission] with notice 120 days before opening a [casino]." *Id*. (citing 25 C.F.R. § 559.2(a)).

Based on these admissions, then, the Department's decision likely represents the last significant hurdle preventing the Tribe from opening new gaming facilities in the Lower Peninsula. The prospect of these casinos being opened is not so attenuated as to deprive the Intervenor Tribes of standing to intervene. "[E]ven where the possibility of prevailing on the merits after remand is speculative, a party seeking to uphold a favorable ruling can still suffer a concrete injury in fact." *Crossroads GPS*, 788 F.3d at 318. *See also Bryant v. Yellen*, 447 U.S. 352, 366-68 (1980) (finding that movants had standing to intervene "even though they could not with certainty establish" that they would in fact be harmed by the Department's adverse action).

More broadly, the Intervenor Tribes have an interest in the outcome of this case even if the "sole issue presented" is as narrow as the Sault Tribe suggests. The Sault Tribe, the Saginaw Tribe, and NHBP all have agreements with the State of Michigan. These compacts explicitly prohibit the tribes from submitting trust applications to the Department without prior written agreement from Michigan's other federally recognized tribes. *See, e.g.*, Sault Tribe Compact, ECF No. 20-1 at 13. The Intervenor Tribes allege that the Sault Tribe failed to seek this prior written agreement before filing its applications. *See* NHBP's Reply 8. Put simply, they have an interest in the Court's determination about how, if at all, the compacts apply to the Sault Tribe's submissions to the Department, and to the Department's decision to deny these applications.

More still, Michigan sought to enjoin the Sault Tribe from submitting its applications to the Department in an earlier case. *See Michigan v. Sault Ste. Marie Tribe of Chippewa Indians*, 737 F.3d 1075 (6th Cir. 2013). There, the tribe acknowledged the possibility of judicial review of the Department's decision. *Id*. at 1081. The Sixth Circuit noted that the court reviewing the agency's decision would be well-positioned to evaluate the legal effects of the IGRA and the tribal compacts on the Sault Tribe's MILCSA applications. *See id.* at 1081-82. The Court

9

agrees. And it finds that the Intervenor Tribes have legally cognizable interests in this review. For these reasons, it concludes that they have sufficiently shown their standing to intervene.

The Casinos' standing presents a closer question. Like the Intervenor Tribes, they assert that an adverse ruling from this Court would expose the Casinos to "the threat of competition from multiple new casinos on the Sault Parcels." Casinos' Mot. at 15. Unlike the Intervenor Tribes, however, the Casinos have no direct interest in how MILCSA, the IGRA, and the Michigan tribal compacts are interpreted.

Because of this, the Government asks the Court to deny the Casinos' motion, suggesting that they "lack standing to weigh in on the proper interpretation of MILCSA." Fed. Defs.' Opp. at 2. The Government makes two primary arguments. First, it suggests that the Casinos' "alleged injury is too speculative to support standing." *Id*. at 5-6. Second, it contends that "'economic injury which results from lawful competition cannot, in and of itself, confer standing on the injured business to question the legality of any aspect of its competitor's operations.'" *Id*. at 7 (quoting *Hardin v. Kentucky Utils. Co.*, 390 U.S. 1, 5 (1968)). Both arguments ultimately tap out.

As discussed above, if the Court orders the Department to take the parcels of land into trust, the Sault Tribe will likely succeed in opening casinos on the land. The resulting loss in gaming dollars from increased competition is not too speculative to preclude the Casinos from intervening. And even if the fate of the proposed casinos is speculative, an order compelling the Department to take the parcels of land into trust would "cause[] a significant immediate injury by depriving [the Casinos] of the benefit of a favorable final judgment." *Clinton v. New York*, 524 U.S. 417, 431 (1998).

The Government's contentions about the Casinos' purported injury are equally unavailing. True, MILCSA "is not aimed at preventing competitive injury—especially competitive injury to non-Indian casinos." Fed. Defs.' Opp. at 7. But the Department's decision to deny the Sault Tribe's trust applications, if upheld, prevents a substantial competitive injury to the Casinos. They thus have the right to make legal arguments in defense of that decision. In short, like the Intervenor Tribes, the Casinos have sufficiently alleged the specter of an injury to their economic interests that is fairly traceable to an adverse regulatory action by the Department. And because a decision by this Court could prevent that injury from occurring, it concludes that the Casinos have Article III standing. *Accord Fund for Animals*, 322 F.3d at 733.[4]

## IV.

Having determined that both the Intervenor Tribes and the Casinos have standing, the Court now turns to the Rule 24 requirements. The movants have met the requirements to join the suit as a matter of right. In the alternative, the Court grants them permission to intervene under Federal Rule 24(b).

---

[4] The Government also argues that the Casinos' "economic interest does not provide a sufficient basis for standing" because the "'theory that a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful is a boundless theory of standing that has never been accepted.'" Fed. Defs.' Opp. at 7 (quoting *Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 249 F. Supp. 3d 524, 539 (D.D.C. 2017)). Maybe so, but this is not what the Casinos allege.

Instead, they argue that the Department's decision to deny the Sault Tribe's trust applications benefited them, and that a reversal of this decision would cause them competitive harm. And, as the Government acknowledges, a market participant may "'assert standing when the Government takes a step that benefits his rival and therefore injures him economically.'" Fed. Defs.' Opp. at 8 (quoting *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1299 (D.C. Cir. 2015)). *See also Fund for Animals*, 322 F.3d at 733 (noting that Mongolia's Ministry had standing because "Mongolia's sheep are the subject of the disputed regulations, the country benefits from [the Department's] current regulations, and Mongolia would suffer concrete injury if the court were to grant the relief the plaintiffs seek).

## A.

The Intervenor Tribes and the Casinos meet all four Rule 24(a)(2) requirements. *First*, neither the Sault Tribe nor the Government challenge the timeliness of the motions to intervene. Timeliness is "judged in consideration of all the circumstances," including "the need for intervention as a means of preserving the applicant's rights" and "the probability of prejudice to those already parties in the case." *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). Here, the Saginaw Tribe filed its motion just 16 days after the Government filed its answer. *See* Dkt.; ECF No. 16. The Casinos filed their motion the next day, and NHBP two days after that. *See* ECF Nos. 18, 20. Neither the filing of these motions nor the Court's consideration of their merits have delayed the case. The Court thus finds that the motions were timely filed.

*Second*, because they have shown they have Article III standing, the movants have necessarily shown that they have a legally protectable interest in the action. *See Fund for Animals*, 322 F.3d at 735 ("Our conclusion that the [movant] has constitutional standing is alone sufficient to establish that [it] has 'an interest relating to the property or transaction which is the subject of the action.'") (citing Fed. R. Civ. P. 24(a)(2)); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (noting that a movant "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)").

*Third*, the Court finds that this action threatens to impair the movants' interest. In evaluating this requirement, the Court considers the "practical consequences" of denying intervention. *See Fund for Animals*, 322 F.3d at 735. True, the movants could perhaps "reverse an unfavorable ruling by bringing a separate lawsuit." *Id*. But "there is no question that the task

of reestablishing the status quo" if the Department is compelled to take the parcels of land into trust "will be difficult and burdensome." *Id*. Indeed, as their continued opposition to the planned casinos is likely, the movants' "involvement [here] may lessen the need for future litigation to protect their interests." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977).

*Fourth*, the movants must show that the Government's representation of their interest "may be inadequate." *Fund for Animals*, 322 F.3d at 735. The movants have the edge here: the showing required to meet this burden is "not onerous." *Id*. Generally, a movant "should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *Id*.

The Sault Tribe suggests that the "proposed intervenors do not explain how their participation as parties in an APA case could remedy any perceived inadequacies in the Department's defense of its decision." Pl.'s Opp. at 27. Judicial review, the tribe adds, is "presumptively limited to the administrative record," and "an agency action may be upheld only based on the reasons offered by the agency in the order under review." *Id*. (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). This requirement "undercuts—if not eliminates—any rationale for intervention." *Id*.

Not so. Again, *Fund for Animals* is instructive. There, the plaintiffs also alleged that the Department violated the APA. *Fund for Animals*, 322 F.3d at 730. The D.C. Circuit noted that it has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id*. at 736. Indeed, courts "look skeptically on government entities serving as adequate advocates for private parties." *Crossroads GPS*, 788 F.3d at 721. This is because a government is "charged by law with representing the public interest of its citizens."

13

*Fund for Animals*, 322 F.3d at 737. By contrast, private parties often seek to protect "a more narrow . . . financial interest not shared by" the public at large. *Id*. Thus, the court found that the Department would not adequately represent the movant's interests.

So too here. The Intervenor Tribes and the Casinos have a narrow financial interest that the Government does not share. The Government need not, and indeed cannot reasonably be expected to, represent these interests. And, in any event, the Intervenor Tribes assert an interest in the correct interpretation of the Michigan tribal compacts and their impact on the Department's decision.

True, the Department did not address these compacts in deciding to decline the Sault Tribe's applications. And it is also true that the Court must restrict its analysis to the administrative record. But this does not necessarily mean the compacts have no relevance. The Court could find, for instance, that the Department erred by failing to consider the effect of the Sault Tribe's compact with Michigan and the IGRA on the Department's ability to accept and review the trust applications.[5] And, that the Government opposed the Casinos' request to intervene may itself suggest that the former will not adequately represent their interests. The Court therefore finds that the movants have met their "minimal" burden to show that the Government might not fully represent their interests. *See Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 14 n.10 (D.D.C. 2016) (citing *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972)). So, because they have met all the requirements of Rule 24(a)(2), the Court finds that NHBP, the Saginaw Tribe, and the Casinos may intervene as a matter of right.

---

[5] To be clear, the Court is not making any finding about the applicability of the tribal compacts or the IGRA to this case. These may well be, as the Sault Tribe suggests, irrelevant to the Department's decision and the legal question at issue. Rather, this point simply highlights a divergence of interest between the Government and the Intervenor Tribes.

## B.

Even if the Intervenor Tribes and the Casinos cannot intervene as a matter of right, the Court finds that they should be permitted to intervene under Rule 24(b)(1)(B). In granting permissive intervention, the Court recognizes that Indian tribes' "participation in litigation critical to their welfare should not be discouraged." *Arizona v. California*, 460 U.S. 605, 615 (1983).

As described above, the movants have established their standing and that their motions were timely filed. Additionally, because the Court has federal question jurisdiction over this case, it has independent jurisdiction over the movants' answers and future motions. *See* 28 U.S.C. § 1331. Permissive intervention imposes two additional requirements. First, the Court must find that the movants have a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Second, it must conclude that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

These requirements are satisfied here. The movants seek to defend the Department's decision to deny the Sault Tribe's trust applications. *See, e.g.*, NHBP's Mot. at 13; Saginaw Tribe's Mot. at 23; Casinos' Mot. at 22. That they share this defense in common with the Department is sufficient under Rule 24(b)(1)(B). *See Neusse v. Camp*, 385 F.2d 694, 704-05 (D.C. Cir. 1967) (explaining that Rule 24(b)'s common claim or defense requirement "is not interpreted strictly so as to preclude permissive intervention"); *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 286 (D.D.C. 2014) (finding that "similarities between the issues

presented" by the intervenors and the Department of Justice showed a common question of law or fact).

Finally, the Court finds that the intervenors will not delay or unduly complicate the proceedings. The Sault Tribe suggests that "the burdens on the Court and the Sault Tribe of adding three additional parties to the case would be significant." Pl.'s Opp. at 31. It worries that their participation "will complicate, rather than facilitate, the efficient resolution of this case." *Id*. at 32. The Court is sensitive to these concerns and will, as described in the accompanying Order, "impose reasonable conditions on [the] intervenors' participation to ensure an orderly, efficient resolution of the case." *Id*. Beyond these conditions, the Court will also increase the Sault Tribe's page limits to provide the tribe ample opportunity to respond to all arguments raised during summary judgment briefing. With these conditions in place, the Court will be able to manage future proceedings in a fair, efficient, and expeditious manner.

**V.**

For these reasons, the Motions to Intervene filed by the Saginaw Tribe, NHBP, and the Casinos will be granted. A separate Order accompanies this opinion.

Dated: April 24, 2019                                   TREVOR N. McFADDEN, U.S.D.J.